UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| O.F.C., Petitioner, -v- THOMAS DECKER *et al.*, Respondents. | 22 Civ. 2255 (JPC) <br> <u>OPINION AND ORDER</u> <br> <u>SEALED</u> |

JOHN P. CRONAN, United States District Judge:

Petitioner, an immigrant who has been incarcerated for over fifteen months at the Orange County Correctional Facility in Goshen, New York, has twice appeared before an Immigration Judge ("IJ") to request his release on bond, once at the outset of his detention and once in the past month. On each occasion, the IJ placed on him the burden of proving that he was neither a danger to the community nor a flight risk, and on each occasion the IJ found that he had not sustained that burden. Arguing that this allocation of the burden of proof violated the Fifth Amendment to the United States Constitution and the Administrative Procedure Act, Petitioner now seeks a writ of habeas corpus entitling him either to release or to a bond hearing at which the Government would be required to justify his continued detention by clear and convincing evidence. The Government, in turn, urges the Court not to reach the merits of the habeas petition because Petitioner failed to exhaust his administrative remedies and argues that, in any event, the IJ's allocation of the burden of proof was lawful.

Because Petitioner's failure to exhaust under the specific circumstances of this case is excused, and because the Second Circuit has held that the Fifth Amendment requires the

Government to bear the burden of proving that an immigrant does not meet the criteria for release on bond once he has been detained for a time period of this length, the Court issues the writ. The matter is therefore remanded to the immigration court for further proceedings consistent with this Opinion and Order, specifically, within fourteen days to hold a bond hearing at which the Government bears the burden or to release Petitioner from custody.

## I. Background

The parties do not dispute the relevant facts. Petitioner[1] is a twenty-nine-year-old man, Dkt. 11-5 at 3, born in El Salvador, who arrived in the United States in 2001 and has not departed the country in the over twenty years since, Dkt. 3 ("McAninch Declaration") ¶ 2. His "entire family" lives in New York. *Id.* ¶ 4. He is married with one daughter and formerly worked in warehouses and as a roofer. McAninch Declaration, Exh. B ("Petitioner Declaration") ¶¶ 16-17, 22.

Petitioner entered the United States without documentation. Dkt. 16 ("Morrow Declaration") ¶ 3. From about 2003 to 2021, he had temporary protected status in the United States. Petitioner Declaration ¶ 15. He was arrested for driving while intoxicated in 2011 at the age of seventeen, and then was arrested for the same offense, as well as for reckless driving, in February 2019. *Id.* ¶¶ 24, 26, 28. He pleaded guilty to the former offense on January 26, 2012, and to the latter two offenses on September 25, 2019. Morrow Declaration ¶¶ 6-7. The 2019 offenses resulted in a sentence of four months of imprisonment, five years of probation, eighteen months of license revocation, five years of required use of an ignition interlock device, and a $2,000 fine. *Id.* ¶ 7. On January 26, 2021, Petitioner's application to renew his temporary

---

[1] The Court has permitted Petitioner to proceed in this action solely under his initials. Dkt. 9.

protective status was denied because of his convictions. Petitioner Declaration ¶ 37; Morrow Declaration ¶ 8. On May 21, 2021, he was arrested outside of his home by Immigration and Customs Enforcement ("ICE"), and he was subsequently detained at the Orange County Correctional Facility. Petitioner Declaration ¶ 37.[2]

Following his ICE arrest, Petitioner and his wife retained counsel. Petitioner Declaration ¶ 38. He initially appeared for a bond hearing on May 27, 2021, but on his motion that hearing was adjourned to June 2, 2021. Morrow Declaration ¶¶ 13-15. At the bond hearing, the IJ put "the burden of proof" on Petitioner "to show that he should be released from custody." McAninch Declaration, Exh. A ("Hearing Tr.") at 3. After a hearing lasting approximately thirty minutes, including argument from the parties and testimony from Petitioner, the IJ denied bail, principally based on Petitioner's "multiple DUI offenses" and lack of sufficient evidence of rehabilitation. *Id.* at 9-10; *see also* Dkt. 15-5 at 3. Although Petitioner's counsel "reserve[d] appeal" at the June 2, 2021 hearing, Hearing Tr. at 10, Petitioner did not appeal the bond decision to the Board of Immigration Appeals ("BIA"), Morrow Declaration ¶ 15.

In June 2021, Petitioner retained his current counsel through The Legal Aid Society, and requested cancellation of removal, asylum, withholding of removal, and protection under the Convention Against Torture. Petitioner Declaration ¶ 40. Those applications were denied on September 28, 2021, and the IJ ordered Petitioner's removal. *Id.* ¶ 44; *see also* Dkt. 15-6 at 18. Petitioner appealed the order of removal to the BIA. McAninch Declaration ¶ 27. On April 14, 2022, the BIA set a briefing schedule, with the parties' briefs due May 5, 2022. Dkt. 24-1. Petitioner has also sought to change his immigration status on the grounds that his wife is a United

[2] On August 2, 2022, Petitioner's counsel informed the Court that Petitioner would likely be transferred to a different detention facility. Dkt. 32.

States citizen. Petitioner Declaration ¶¶ 38, 45. Petitioner's counsel represents that such applications are generally successful, though not until after a significant delay. McAninch Declaration ¶¶ 28-29.

In light of the COVID-19 pandemic, on September 21, 2021, Petitioner sought release on medical grounds pursuant to *Fraihat v. U.S. Immigrations & Customs Enforcement*, 445 F. Supp. 3d 709 (C.D. Cal. 2020), *rev'd*, 16 F.4th 613 (9th Cir. 2021). Morrow Declaration ¶ 25. Orange County Correctional Center medical personnel evaluated Petitioner and determined that he did not qualify. *Id.* On March 18, 2022, ICE reevaluated Petitioner's case and again determined that he did not qualify for release. *Id.* ¶ 26.

On August 12, 2022, Petitioner requested a subsequent bond hearing under 8 C.F.R. § 1003.19(e), due to materially changed circumstances. Dkt. 34 ("McAninch 8/19/22 Letter") at 1. He further requested that at the hearing the Government bear the burden of proving, by clear and convincing evidence, that his continued detention was justified. *Id.* At a hearing on August 17, 2022, the IJ rejected Petitioner's arguments concerning the allocation of the burden of proof, instead requiring him to prove that he was neither a danger to the community nor a flight risk. *Id.* After the hearing, bond was once again denied. *Id.* The IJ found that Petitioner did not meet the standard in 8 C.F.R. § 1103.19(e) for eligibility for a bond redetermination; in the alternative, the IJ found that Petitioner had not proven that he was neither a danger to the community nor a flight risk. *Id.* at 1-2.

Petitioner filed a petition seeking a writ of habeas corpus on March 18, 2022. Dkt. 1 ("Petition").[3] Petitioner argues that the IJ's assigning him the burden of proof at his June 2, 2021

---

[3] Respondents are Thomas Decker, the Director of ICE's New York Field Office; H. Kevin Mart, the Acting Assistant Chief Judge of the Executive Office of Immigration Review; Carl DuBois, the Director of the Orange County Correctional Facility; David Neal, the Director of the

bond hearing deprived him of due process of law, in violation of the Fifth Amendment to the United States Constitution, and constituted arbitrary and capricious agency action, in violation of section 706 of the Administrative Procedure Act, 5 U.S.C. § 706. Petition ¶¶ 117-121. As relief, Petitioner seeks his immediate release unless he is provided a bond hearing at which the Government bears the burden of proving, by clear and convincing evidence, that he is a danger to the community or is a flight risk. *Id.* at 34 (Prayer for Relief 3). The Government opposed the Petition on April 14, 2022, Dkt. 18 ("Opposition"), and Petitioner replied on May 5, 2022, Dkt. 23 ("Reply"). On August 19, 2022, Petitioner's counsel, writing on behalf of the parties, provided the Court with an update as to the August 17, 2022 bond redetermination hearing, discussed above. *See* McAninch 8/19/22 Letter.

## II. Legal Standards

Petitioner is in custody pursuant to 8 U.S.C. § 1226(a), which authorizes the Government to "arrest[] and detain[]" "an alien" "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Federal district courts may "grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "[T]he Due Process Clause covers noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (citing *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)). Habeas review thus extends to

---

Executive Office of Immigration Review; Merrick Garland, the Attorney General of the United States; Alejandro Mayorkas, the Secretary of the United States Department of Homeland Security; and Tae Johnson, the Acting Director of ICE. Petition at 1.

"claims by non-citizens challenging the constitutionality of their detention." *Keisy G.M. v. Decker*, No. 21 Civ. 4440 (JPC), 2021 WL 5567670, at *5 (S.D.N.Y. Nov. 29, 2021).

## III. Analysis

Petitioner argues that the Due Process Clause of the Fifth Amendment requires the Government to bear the burden of proving, at a bond hearing, that he would be either a flight risk or a danger to the community.[4] Petition ¶¶ 117, 119. The Government denies that the Due Process Clause requires it to bear this burden of proof. Opposition at 17-32. Furthermore, the Government argues that the Court should not even reach this constitutional issue because of Petitioner's failure to exhaust his administrative remedies. *Id.* at 11-17. Consequently, the Court begins with the threshold question of whether Petitioner's failure to exhaust precludes consideration of his due process challenge.

### A. Exhaustion

Federal regulations permit a detained immigrant who has been denied bond by an IJ to appeal that denial to the BIA. 8 C.F.R. § 236.1(d)(3)(i). Yet after Petitioner was denied bond by the IJ on June 2, 2021, Hearing Tr. at 9-10, he did not appeal that denial to the BIA, Morrow Declaration ¶ 15. Thus, as the parties agree, Petitioner failed to exhaust his administrative remedies with respect to the IJ's June 2, 2021 denial of bond. Opposition at 11; Reply at 7. Nonetheless, Petitioner argues that this failure to exhaust should be excused. Reply at 7. Because the BIA could not grant effective relief on Petitioner's constitutional arguments, and because

[4] As noted, Petitioner also argues that the IJ's allocation of the burden of proof at his bond hearing constituted arbitrary and capricious agency action, in violation of section 706 of the Administrative Procedure Act, 5 U.S.C. § 706. Petition ¶ 121. Because the Court finds that Petitioner prevails on his constitutional argument under binding Second Circuit precedent, arising under materially indistinguishable facts, it will not consider his statutory arguments under the Administrative Procedure Act.

pursuing his remaining arguments on their own would have been futile, the Court excuses his failure to exhaust.

The requirement to exhaust administrative remedies can be imposed either by Congress or by the courts. *See Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2003). As the Second Circuit has explained, "the distinction between the two exhaustion requirements can be 'pivotal,' because statutory exhaustion requirements are mandatory, while the judicial (common-law) exhaustion doctrine is discretionary and includes a number of exceptions." *Id.* (quoting *Bastek v. Fed. Crop Ins. Corp.*, 145 F.3d 90, 94 (2d Cir. 1998)). Statutory exhaustion requirements must be obeyed: "Where Congress specifically mandates, exhaustion is required." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (citations omitted), *superseded by statute on other grounds as recognized in Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). By contrast, when courts exercise their own discretion in requiring parties to exhaust administrative remedies, courts may likewise exercise that discretion by excusing a failure to exhaust. *Id.* ("[W]here Congress has not clearly required exhaustion, sound judicial discretion governs." (citations omitted)).

The legal consequences of Petitioner's failure to exhaust his administrative remedies, then, depend considerably on what kind of exhaustion requirement governs his challenge to the IJ's denial of bond. As the parties agree, the exhaustion requirement applicable to Petitioner is imposed through judicial discretion rather than by statute. *See* Opposition at 12-14; Reply at 7. "There is no statutory requirement that a habeas petitioner exhaust his administrative remedies before challenging his immigration detention." *Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533, 538 (S.D.N.Y. 2014). Rather, "[s]ince Congress is silent on the issue, courts have applied a judicially created requirement that, generally, a petitioner must exhaust his administrative remedies before seeking federal court intervention." *Id.* (citation omitted). If a statute prohibited detained

immigrants from petitioning for habeas relief in federal court unless they administratively exhausted their challenge to the bond denial, Petitioner's failure to appeal to the BIA would mandate denial of his Petition. But because detained immigrants are required to appeal administratively as a matter of judicial discretion, the Court may also exercise its discretion, if circumstances are appropriate, to excuse Petitioner's failure to exhaust.

A court may excuse the failure to satisfy a judicially imposed administrative exhaustion requirement in four kinds of circumstances: "when '(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question.'" *Beharry*, 329 F.3d at 62 (quoting *Able v. United States*, 88 F.3d 1280, 1288 (2d Cir. 1996)). But although the failure to exhaust administrative remedies is excusable only when one of these factors is present, their application must be "intensely practical." *Bowen v. City of New York*, 476 U.S. 467, 484 (1986). Consequently, "[t]he ultimate decision of whether to waive exhaustion should not be made solely by mechanical application of [these] factors, but should also be guided by the policies underlying the exhaustion requirement." *Id.* In deciding whether to excuse a particular failure to exhaust, a court must make a "judgment that weighs the utility of exhaustion against countervailing considerations like futility and irreparable harm." *Abbey v. Sullivan*, 978 F.2d 37, 44 (2d Cir. 1992); *see also New York v. Sullivan*, 906 F.2d 910, 918 (2d Cir. 1990) ("[A] more general approach, balancing the competing considerations to arrive at a just result, is in order."). Whether Petitioner's acknowledged failure to exhaust should be excused, then, depends on whether requiring exhaustion in these circumstances would advance the purposes of the exhaustion requirement. *See Abbey*, 978 F.2d at 45 ("[S]aying that exhaustion

would be futile is merely another way of stating that the policies underlying the exhaustion requirement do not apply in a given case.").

Petitioner urges the Court to excuse his failure to appeal to the BIA because his primary argument for why the Government must bear the burden of justifying his continued detention rests on the procedural due process guaranteed by the Fifth Amendment. Petition ¶¶ 79-91. As the parties agree, Opposition at 15-16; Reply at 7, on appeal the BIA could not have reversed the IJ's decision denying bond on the grounds that the IJ's allocation of the burden of proof was unconstitutional, because "constitutional claims lie outside the BIA's jurisdiction," *United States v. Gonzalez-Roque*, 301 F.3d 39, 47 (2d Cir. 2002); *see also In re C-*, 20 I. & N. Dec. 529, 532 (B.I.A. 1992) ("[I]t is settled that the immigration judge and this Board lack jurisdiction to rule upon the constitutionality of the Act and the regulations." (citations omitted)). And since the BIA could not have considered that due process argument, an administrative appeal presented no "genuine opportunity for adequate relief," *Beharry*, 329 F.3d at 62, on that basis. *See McCarthy*, 503 U.S. at 147-48 ("An administrative remedy may be inadequate because of some doubt as to whether the agency was empowered to grant effective relief. For example, an agency, as a preliminary matter, may be unable to consider whether to grant relief because it lacks institutional competence to resolve the particular type of issue presented, such as the constitutionality of a statute." (citations and internal quotation marks omitted)).

But although the Government does not dispute that constitutional arguments lie outside the BIA's jurisdiction, it insists that Petitioner nonetheless should have appealed to the BIA because he might have convinced the BIA to reverse the IJ's denial of bond on some other ground. Opposition at 15-16. Two potential non-constitutional arguments are readily apparent. First, the Petition argues that the IJ's allocation of the burden of proof, as established by the BIA in *In re*

*Adeniji*, 22 I. &. N. Dec. 1102 (B.I.A. 1999), was inconsistent not only with the Constitution, but also with the Administrative Procedure Act's prohibition on arbitrary and capricious agency action. Petition ¶¶ 107-116, 120-121. While the BIA lacks jurisdiction to consider Petitioner's constitutional claim, it could have considered his argument that the IJ's allocation of the burden of proof violated administrative law. And second, as the Government notes, Petitioner could have attacked the denial of bond on the merits by arguing that he did, in fact, carry the burden of proof that the IJ placed upon him at his bond hearing. Opposition at 15. Thus, the Government argues that this Court should not excuse Petitioner's failure to seek relief from the BIA because an administrative appeal would have provided him a genuine opportunity for relief. *See* Opposition at 15-16. Nonetheless, although these two alternative arguments were available, the Court excuses Petitioner's failure to raise either before the BIA.

First, while the BIA's jurisdiction does encompass the statutes regulating immigration and administrative procedure, Petitioner's particular statutory argument that the allocation of the burden of proof at his bond hearing violated the Administrative Procedure Act would have been futile to raise before the BIA. Exhaustion is futile if "the agency has already determined the issue." *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019) (citation omitted). Over two decades have passed since the BIA first determined in *In re Adeniji* that immigrant detainees bear the burden of proof in bond hearings, and in the intervening years the BIA has heard literally tens of thousands of appeals from bond decisions applying that standard.[5] *See In re Adeniji*, 22 I. & N. Dec. 1102. Thus, it has had tens of thousands of opportunities to reconsider whether its allocation of the

[5] Statistics on the BIA's docket are currently available from the Department of Justice only through fiscal year 2018, but they reflect that the BIA received almost 15,000 appeals from bond determinations in the immediately prior five-year period alone. U.S. Dep't Just. Exec. Off. Immigr. Rev., *Statistics Yearbook: Fiscal Year 2018*, at 36, https://www.justice.gov/eoir/file/1198896/download (last visited Sept. 12, 2022).

burden of proof in bond hearings violated the requirements of administrative law, and on none of those occasions has it chosen to do so. It is of course conceivable that, given one more chance, the BIA might reconsider that allocation of the burden of proof, notwithstanding having employed it without hesitation in tens of thousands of prior appeals of denials of bond. But it is hard to imagine a less ambiguous example of an agency's having already made up its mind than the BIA's consistent and lengthy record of allocating the burden of proof to detained immigrants. *See, e.g.*, *Gonzalez Evangelista v. Decker*, No. 20 Civ. 8758 (AKH), 2021 WL 101201, at *3 (S.D.N.Y. Jan. 12, 2021) (finding exhaustion futile because "[t]he BIA has consistently and clearly held that the burden in a bond hearing should be placed on the alien seeking release"); *Rodriguez v. Decker*, No. 20 Civ. 4118 (PKC), 2020 WL 3618990, at *2 (S.D.N.Y. June 30, 2020) ("The outcome of such an appeal has been predetermined by the BIA's adherence to its stated legal interpretation on the appropriate allocation of the burden of proof."); *Velasco Lopez v. Decker*, No. 19 Civ. 2912 (ALC), 2019 WL 2655806, at *3 (S.D.N.Y. May 15, 2019) ("[T]his Court deems the issue of the current burden as predetermined."), *aff'd*, 978 F.3d 842 (2d Cir. 2020). In fact, the BIA just over three weeks ago once again placed the burden on Petitioner, notwithstanding his detention at that point for nearly fifteen months and the Second Circuit's holding in *Velasco Lopez*, discussed *infra* at III.B. McAninch 8/19/22 Letter at 1.

This finding that Petitioner's administrative law arguments would have been futile before the BIA is reinforced by the fact that raising those arguments would not have served the purposes of exhaustion. The Supreme Court has explained that exhaustion "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy*, 503 U.S. at 145. Given the BIA's history of consistently interpreting statutory and regulatory authorities to place the burden of proof on immigrant detainees, including most recently on

Petitioner himself after over fifteen months of detention, requiring Petitioner to raise his statutory arguments on appeal to the BIA would have advanced neither purpose.

Respect for administrative agency authority "recognizes the notion . . . that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer." *Id.* But when an agency has already been given literally tens of thousands of opportunities to address a particular question, including so recently for this particular litigant, it would hardly undercut the agency's primary responsibility for its programs were a court to step in without first giving the agency yet another opportunity. And the threat to agency autonomy is particularly weak when courts review not the "exercise of the agency's discretionary power" or the application of its "special expertise," areas in which "[e]xhaustion concerns apply with particular force," but rather the procedural adequacy of agency action under the Administrative Procedure Act, which is administered primarily by the courts. *Id.* As to the second purpose of exhaustion, certainly "[g]iving the agency first crack at correcting its own errors also conserves judicial resources." *Abbey*, 978 F.2d at 45 (citation omitted). But again here the agency has been given thousands of cracks to reconsider how it allocates the burden of proof. Given the consistency of the BIA's adherence to its current approach, giving it yet another crack would offer little prospect of a different result. Efficiency would hardly be advanced were Petitioner and the agency to expend resources on an appeal whose outcome is all but foreordained, only to then return to federal court to answer a constitutional question. Under these circumstances, considerations of efficiency do not counsel in favor of requiring Petitioner to raise these arguments before the BIA.

As the Government has emphasized, Opposition at 16, that an "argument would likely have failed is not tantamount to stating that it would have been futile to raise it." *Beharry*, 329 F.3d at 62. That is true. But the BIA's history of consistently allocating the burden of proof to immigrant

detainees establishes considerably more than just a likelihood that Petitioner's argument would have failed. In *Beharry*, for example, the petitioner failed entirely to raise a particular statutory ground of relief before the IJ or the BIA, *id* at 54-55, then sought to excuse the failure to exhaust by speculating about how the IJ and the BIA would have applied that statutory provision in those proceedings, had it been raised, *id* at 62-63. By contrast, Petitioner need not speculate about how the BIA would have addressed his statutory arguments concerning the burden of proof, since the BIA has made its views on that subject abundantly clear. While mere pessimism about the chances of a particular argument's success does not suffice for futility, exhaustion is futile when the decision-maker has already made up its mind and clearly communicated its position on the very question that an appeal would ask. *Cf. Houghton v. Shafer*, 392 U.S. 639, 640 (1968) (per curiam) (finding that a prisoner's appeal to the state attorney general would be futile when the attorney general had already expressed the view that the challenged prison regulations were lawful); *Abbey*, 978 F.2d at 45 ("[W]hen the challenge is to regulations promulgated and consistently enforced by the agency, and which the agency has . . . no inclination, to correct. . . . exhaustion would serve no legitimate purpose, *i.e.*, it would be futile." (citations omitted)).

The other potential alternative argument available to Petitioner would entail him challenging the merits of the IJ's finding that he failed to show he would not be a danger to the community. This argument is not futile in its own right, since the BIA certainly can reverse an IJ's bond determination on the merits. And in some circumstances it might be reasonable to require detained immigrants to contest a denial of bond on the merits before seeking judicial review of the constitutionality of the agency's procedures. *See, e.g.*, *Cepeda v. Shanahan*, No. 15 Civ. 9446 (AT), 2016 WL 3144394, at *2 (S.D.N.Y. Apr. 22, 2016) (requiring exhaustion before "reviewing the IJ's determination for constitutional, as opposed to evidentiary, soundness"). But in this case

neither of the two purposes of the exhaustion requirement—promoting respect for agency authority nor enhancing judicial efficiency—would have been advanced by Petitioner first contesting his denial of bond before the BIA on the merits, pursuant to what he contends is a constitutionally flawed standard, then seeking judicial review of the IJ's allocation of the burden of proof.

As noted, exhaustion promotes respect for agency authority by preventing courts from usurping the responsibility that Congress has granted primarily to the agency in administering a particular statutory scheme. *McCarthy*, 503 U.S. at 145. Consequently, exhaustion becomes particularly important if a court's review of an agency's decisions would displace authority that Congress granted to the agency. Such interference might occur if judicial review would require a court to supervise the agency's exercise of its discretion or its expertise, *id.* (noting the "particular force" of exhaustion requirements when applied to challenges to an agency's exercise of "discretionary power" or "special expertise"), or if subjecting agencies to judicial review prematurely would disrupt the smooth functioning of agency procedures, *id.* (noting "the commonsense notion of dispute resolution that an agency ought to have an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court").

But neither concern weighs against excusing Petitioner's failure to exhaust, largely for reasons discussed above. Again, far from seeking to displace the BIA's authority over subjects Congress has placed within its jurisdiction, Petitioner asks this Court to evaluate the constitutional adequacy of the agency's procedures, a question over which the BIA lacks any jurisdiction. And while certainly respect for an agency's authority over its own procedures would ordinarily counsel against a court's intervening to correct errors the agency has not yet had the opportunity to review, in this case the agency will never have an "opportunity to correct its own mistakes," *id.*, since the challenged procedures allegedly violated a source of law—the Constitution—that the agency

cannot consider. Where, as here, the Court would be exercising authority denied to the agency, judicial review displays no disrespect for agency authority. *Cf. Abbey*, 978 F.2d at 44-45 (distinguishing judicial review of an agency's application of its regulations, which does meaningfully interfere with agency autonomy, from judicial review of the adequacy of the regulations, which does not). If anything, in these circumstances judicial review enhances cooperation between the different branches of government: by correcting the agency's errors concerning a subject that lies outside its jurisdiction and expertise, the court better enables the agency to address the subjects that do lie within that jurisdiction and expertise.

Nor would requiring exhaustion of a challenge to the merits of the IJ's decision advance judicial efficiency. Exhaustion advances judicial efficiency if by resolving a dispute through its own procedures the agency can make judicial involvement entirely unnecessary. This reasoning weighs particularly strongly when judicial review would involve deciding a question that courts generally aim to avoid, such as a question of constitutional law. *Id.* at 45. But requiring Petitioner to appeal the IJ's bond determination on the merits would likely produce minimal gains in judicial efficiency, for two reasons.

First, because the claims raised by the Petition would be simple to resolve given binding precedent, any savings produced by administrative resolution of this dispute could only be minimal. As explained below, the Second Circuit in *Velasco Lopez* plainly established Petitioner's entitlement to the bond hearing he seeks. *See infra* III.B. A court need not be worried about entering unchartered constitutional waters when it merely engages in the straightforward task of applying recent precedent to materially indistinguishable facts.

Second, because Petitioner challenges the burden of proof that must now be employed in evaluating his eligibility for bond, any arguments he could raise on the merits in a BIA appeal are

intertwined with the arguments he advances in this Court. While Petitioner could possibly prevail in administrative proceedings employing a less favorable burden of proof, the strength of his arguments will be significantly influenced by how the burden of proof is allocated—as suggested by the IJ's denial of bond at his recent subsequent bond hearing, *see* McAninch 8/19/22 Letter. Indeed, the Supreme Court has recognized that exhaustion contributes little to efficiency "where the challenge is to the adequacy of the agency procedure itself," for in such cases "'the question of the adequacy of the administrative remedy . . . [is] for all practical purposes identical with the merits of [the plaintiff's] lawsuit.'" *McCarthy*, 503 U.S. at 148 (alterations in original) (quoting *Barry v. Barchi*, 443 U.S. 55, 63 n.10 (1979)). The more the outcome of administrative proceedings depends on a question that can be answered only in court, the more inefficient it will be to insist that those administrative proceedings occur before the court's answer may be sought. Because the proper allocation of the burden of proof may dramatically influence the result of an adjudication on the merits of Petitioner's request for bond, insisting that an appeal on the merits must occur before this Court can consider how the burden should be allocated would do little to advance efficiency.

In sum, since this Court is able to easily resolve the claims raised in the Petition, exhaustion would in fact reduce efficiency on the whole: verifying the procedures that must be employed in Petitioner's specific circumstances avoids the highly inefficient scenario of the Court vacating a bond denial that applied incorrect procedures after an administrative appeal, and then ordering that the proceedings before the IJ be entirely repeated. Thus, although Petitioner could have raised non-constitutional arguments had he appealed his denial of bond to the BIA, the purposes of the exhaustion requirement would not be advanced by requiring him to pursue that appeal before petitioning this Court for habeas relief. Consequently, the Court finds it appropriate, in these

circumstances, to excuse Petitioner's failure to exhaust. This conclusion echoes many other decisions in this District that have excused immigrant detainees' failure to exhaust administrative remedies before seeking judicial review of the allocation of the burden of proof at their bond hearings. *See Gonzalez Evangelista*, 2021 WL 101201, at *2-3; *Rodriguez*, 2020 WL 3618990, at *1-2; *Velasco Lopez*, 2019 WL 2655806, at *2-3; *Joseph v. Decker*, No. 18 Civ. 2640 (RA), 2018 WL 6075067, at *5-7 (S.D.N.Y. Nov. 21, 2018); *Brevil v. Jones*, No. 17 Civ. 1529 (LTS) (GWG), 2018 WL 5993731, at *2-3 (S.D.N.Y. Nov. 14, 2018).

To be sure, some courts in this District have required immigrant detainees to exhaust their appeals to the BIA before challenging in court the allocation of the burden of proof at their bond hearings. *See Monterosa v. Decker*, No. 20 Civ. 2653 (MKV), 2020 WL 1847771, at *4-7 (S.D.N.Y. Apr. 11, 2020); *Torres v. Decker*, No. 18 Civ. 10026 (VEC), 2018 WL 6649609, at *2-4 (S.D.N.Y. Dec. 19, 2018). But those cases differed from Petitioner's in two respects material to the purposes of the exhaustion requirement: appeals to the BIA had already been filed and briefed by the time the district court considered the detainee's habeas petition, and, more significantly, the Second Circuit had not yet decided *Velasco Lopez* at the time of those decisions. It may well be more efficient for the BIA to resolve an already pending appeal before a court tackles a novel question of constitutional law: by that point completing the administrative appeal would entail relatively little time and effort, whereas the constitutional issues that the court would need to face might be complex and demanding. And it is of course well settled that "'federal courts should, where possible, avoid reaching constitutional questions.'" *Moore v. Cohen*, 548 F. Supp. 3d 330, 337 (S.D.N.Y. 2021) (quoting *Allstate Ins. Co. v. Serio*, 261 F.3d 143, 149-50 (2d Cir. 2001)), *aff'd*, No. 21-1702-cv, 2022 WL 2525722 (2d Cir. July 7, 2022). But requiring Petitioner to exhaust now would force him to start from scratch on an administrative appeal that would employ

a burden of proof that (as discussed shortly) is inconsistent with controlling precedent, whereas resolving his Petition entails this Court simply applying that precedent to the materially identical facts of his case. As such, exhaustion here would be considerably less efficient than it was in *Monterosa* or *Torres*. Thus, given the circumstances presented here, the Court excuses Petitioner's failure to exhaust to the BIA before challenging as unconstitutional the allocation of the burden of proof at his bond hearing.

**B. The Burden of Proof**

Petitioner argues that the Due Process Clause of the Fifth Amendment requires the Government always to bear the burden of proof at detained immigrants' bond hearings, Petition ¶¶ 79-91, and, in the alternative, that his detention, due to its length, cannot lawfully continue unless he is afforded an additional bond hearing at which the Government would bear the burden of proof, *id.* ¶¶ 92-100. Because given the length of Petitioner's detention *Velasco Lopez* plainly requires that he be given a subsequent bond hearing at which the Government would bear the burden of proof, the Court need not first consider his arguments concerning the burden in all bond hearings to conclude that his Petition must be granted.

The Fifth Amendment entitles all "persons" deprived of liberty, including non-citizens, to due process of law. U.S. Const. amend. V; *Zadvydas*, 533 U.S. at 693. The parties do not dispute that Petitioner's current conditions of detention have deprived him of liberty. *Cf. Charles v. Orange Cty.*, 925 F.3d 73, 78 n.3 (2d Cir. 2019) ("[C]ivil immigration detainees are housed in conditions similar to those experienced by detainees awaiting trial on criminal charges."). Thus, this Court must determine whether the procedures afforded to Petitioner constitute due process of law. In general, whether administrative procedures afford due process to those deprived of liberty depends on the three-factor test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), which

requires courts to balance the interests of the government and of the affected individual in light of the effectiveness of the procedures that were and that might be employed. *See, e.g.*, *Hamdi v. Rumsfeld*, 542 U.S. 507, 528-29 (2004) ("The ordinary mechanism that we use for balancing such serious competing interests, and for determining the procedures that are necessary to ensure that a citizen is not deprived of life, liberty, or property, without due process of law, is the test that we articulated in *Mathews v. Eldridge*." (citations and internal quotation marks omitted)).

Applying the *Mathews* test requires an often difficult inquiry into the weight of various private and public interests and the effectiveness of the procedures that were and that could be employed. But to decide the Petition, this Court need not conduct a fresh inquiry, for in *Velasco Lopez* the Second Circuit has already determined how the *Mathews* factors apply to facts that are materially indistinguishable from those in Petitioner's case. In *Velasco Lopez*, the petitioner, Carlos Alejandro Velasco Lopez, was detained for fifteen months during the pendency of his removal proceedings. 978 F.3d at 846. And because at Velasco Lopez's two bond hearings he bore the burden of proving that he was neither a flight risk nor a danger to the community, that detention continued even though the Government had never shown, and an IJ had never found, that he would be a flight risk or a danger to the community. *Id.* Based on these facts, the Second Circuit concluded "that Velasco Lopez's prolonged incarceration, which had continued for fifteen months without an end in sight or a determination that he was a danger or flight risk, violated due process." *Id.* at 855. Due process, it determined, requires "that individuals subject to prolonged detention under § 1226(a) must be afforded process in addition to that provided by the ordinary bail hearing." *Id.* at 854. Therefore, the Second Circuit held that "the district court appropriately . . . order[ed] a new hearing at which the Government was called upon to justify

continued detention," and that at that hearing "a clear and convincing standard was appropriate." *Id.* at 855.

*Velasco Lopez* directly controls this Court's disposition of the Petition. Like Velasco Lopez, Petitioner has now been detained for over fifteen months pursuant to 8 U.S.C. § 1226(a). Petitioner Declaration ¶ 37. Like Velasco Lopez, Petitioner has had two bond hearings at which an IJ required him to prove that he should be released from custody as neither a danger to the community nor a flight risk. *See* Hearing Tr. at 3; McAninch 8/19/22 Letter at 1. Because Petitioner, not the Government, bore the burden of proof at those bond hearings, Petitioner's detention continues even though no adjudicator has ever determined that he in fact would be a danger to the community or a flight risk, again like Velasco Lopez. *See* Hearing Tr. at 9-10 (denying bond based only on Petitioner's failure to meet his burden); McAninch 8/19/22 Letter at 1. If Velasco Lopez's detention deprived him of due process, as the Second Circuit held it did, then so too does Petitioner's.

The Government's arguments for why Petitioner's detention comports with due process, notwithstanding *Velasco Lopez*, are unconvincing. Although the Government attempts to directly apply the *Mathews* factors to the circumstances of Petitioner's detention, those arguments primarily consider aspects of Petitioner's detention that also characterized Velasco Lopez's, including general facts about detention pursuant to 8 U.S.C. § 1226(a). Opposition at 27-30. Such arguments are foreclosed in this Court, which is bound by the Second Circuit's evaluation in *Velasco Lopez* of how the *Mathews* factors apply to detention under section 1226(a). The Government does identify one difference between Petitioner's detention and Velasco Lopez's: Petitioner, unlike Velasco Lopez, has been ordered removed by an IJ. Opposition at 25-26; *see* Dkt. 15-6 at 16. But the stage of the removal process was not a factor in the Second Circuit's

conclusion that Velasco Lopez's detention violated due process, *see generally Velasco Lopez*, 978 F.3d at 851-55, and it is unclear why that distinction would justify a different conclusion in evaluating Petitioner's detention, *cf. id.* at 852 ("Detention under § 1226(a) is frequently prolonged because it continues *until all proceedings and appeals are concluded*." (emphasis added)). The Government has not denied Petitioner's contention that his removal proceedings, and thus his detention, may continue for a lengthy and indefinite period until they are finally resolved. *See* Petition ¶ 51; McAninch Declaration ¶ 27. Thus, as was the case in *Velasco Lopez*, Petitioner's "prolonged incarceration" has "continued for fifteen months without an end in sight or a determination that he was a danger or a flight risk." 978 F.3d at 855. Consequently, the Government may not continue to detain Petitioner unless it provides him with an additional bond hearing at which the Government must bear the burden of proving that he would be a flight risk or a danger to the community.[6]

**C. Additional Procedural Requirements**

Lastly, Petitioner identifies a number of additional procedural requirements that, in his view, any subsequent bond hearing must feature. First, he asks that the Government be required to meet its burden of proof by clear and convincing evidence. Petition at 34 (Prayer for Relief 3.a). Because in *Velasco Lopez* the Second Circuit explicitly required this standard of proof to be

---

[6] The Government argues that this Court should not grant the Petition, even if Petitioner was denied due process, since he has failed to show that he was prejudiced by that denial. Opposition at 30-32. But in support of this argument, the Government relies primarily on a case where it would have been impossible as a matter of law for the allegedly unconstitutional procedures to have had any influence on the outcome, since the immigrant conceded all the factual predicates that the statute required for his removal order to be reinstated. *Garcia-Villeda v. Mukasey*, 531 F.3d 141, 149 (2d Cir. 2008). The errors in *Garcia-Villeda* failed to cause prejudice because they could not have had an influence on the outcome of proceedings. *Id.* By contrast, the errors of which Petitioner complains clearly *could* have influenced the outcome of his bond hearing. The Court declines to find an absence of prejudice by speculating about what *would* have happened had the IJ complied with the requirements of due process.

employed, 978 F.3d at 855-57, the Government must meet the clear and convincing standard at any subsequent bond hearing.

Second, Petitioner asks the IJ to "conform to the principles of fundamental fairness" and not to "give undue weight to unreliable evidence." Petition at 34 (Prayer for Relief 3.b). However, neither the Petition nor Petitioner's subsequent briefing explains the content of these principles, nor do they identify by what authority the Court might require the IJ to employ them. Without understanding the content or parameters of the requested principles, the Court will not impose them on the IJ.

Finally, Petitioner asks that the IJ be required to "meaningfully consider alternatives to imprisonment such as release on recognizance, parole or electronic monitoring," *id.* (Prayer for Relief 3.c), and that the IJ be required to "meaningfully consider O.F.C.'s ability to pay if setting monetary bond," *id.* (Prayer for Relief 3.d). The Government concedes in general that IJs have broad discretion to consider a variety of factors when determining bond, including alternative conditions of release and ability to pay. Opposition at 35 & n.13. And courts in this District overwhelmingly agree that IJs must consider these two factors—alternatives to imprisonment and ability to pay—when determining bond for a detained immigrant. *See, e.g.*, *Banegas v. Decker*, No. 21 Civ. 2359 (VEC), 2021 WL 1852000, at *4 (S.D.N.Y. May 7, 2021); *Quintanilla v. Decker,* No. 21 Civ. 417 (GBD), 2021 WL 707062, at *4 (S.D.N.Y. Feb. 22, 2021); *Hernandez-Aviles v. Decker*, No. 20 Civ. 7636 (ER), 2020 WL 5836519, at *3 (S.D.N.Y. Oct. 1, 2020); *Roman v. Decker*, No. 20 Civ. 6752 (AJN), 2020 WL 5743522, at *3-4 (S.D.N.Y. Sep. 25, 2020); *Arce-Ipanaque v. Decker*, No. 19 Civ. 1076 (JMF), 2019 WL 2136727, at *3 (S.D.N.Y. May 15, 2019); *Gomes Herbert v. Decker*, No. 19 Civ. 760 (JPO), 2019 WL 1434272, at *4 (S.D.N.Y. Apr. 1,

2019); *Hernandez v. Decker,* No. 18 Civ. 5026 (ALC), 2018 WL 3579108, at *12 (S.D.N.Y. July 25, 2018).

The Government raises two arguments for why the IJ should not be required to consider these factors. First, it argues that because the immigrant's danger to the community constitutes the "threshold issue" at a bond hearing, an IJ can consider alternative conditions of release only when considering whether the immigrant is a flight risk, after having determined that he is not a danger to the community. Opposition at 34-35. But it is not clear why an IJ may not consider alternative conditions of release in deciding the danger question, since an immigrant's dangerousness to the community may be addressed by the imposition of certain conditions of release. *Cf. Roman*, 2020 WL 5743522, at *4 (criticizing this argument for conflating the substantive question of whether a dangerous immigrant may be denied bond with the procedural question of how the Government must establish that an immigrant is dangerous). Second, the Government argues that a requirement that the IJ consider certain factors would interfere with the IJ's broad discretion to determine the weight that should be accorded to different factors in determining bond. Opposition at 35-36. But requiring the IJ to consider certain factors does not displace the IJ's discretion to determine how much those factors should weigh in ultimately setting bond. And, indeed, since those factors can influence what amount of bond is required to secure an immigrant's return to court, IJs should consider them even if, in a particular case, they do not ultimately change the amount of any bond that the IJ ultimately imposes or whether the IJ orders continued detention. *See Hernandez*, 2018 WL 3579108, at *12. Thus, in any bond hearing afforded to Petitioner, the IJ must consider alternative conditions of release and Petitioner's ability to pay.

## IV. Conclusion

For the foregoing reasons, the Petition for a Writ of Habeas Corpus is granted. Petitioner must be released within fourteen days of this Opinion and Order unless he is provided with a hearing for redetermination of bond at which he must be granted bond unless the Government proves, by clear and convincing evidence, that he is a danger to the community or a flight risk. In determining whether to grant bond, the IJ shall consider the availability of alternative conditions of release, and in determining the amount of any bond imposed, the IJ shall consider Petitioner's ability to pay, though it shall remain within the IJ's discretion to determine the influence those considerations shall have on the IJ's ultimate decision. The Court also grants the sealing requests pending at Docket Numbers 22, 28, and 31, and respectfully directs the Clerk of Court to file this Opinion and Order under seal and to set the viewing level to give access to case participants only. Petitioner may propose any appropriate redactions to this Opinion and Order by September 19, 2022, and in doing so, shall justify those redactions with particularity under *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006).[7] In addition, the Clerk of Court is respectfully directed to close the motions pending at Docket Numbers 29, 30, 32, and 33 as moot.

SO ORDERED.

Dated: September 12, 2022
New York, New York

JOHN P. CRONAN
United States District Judge

[7] To be clear, however, the fourteen-day period for a bond hearing or Petitioner's release begins on the date of this Opinion and Order, September 12, 2022, not the date of any unsealing of this Opinion and Order.